Good morning. If it pleases the court, my name is Terry Merriam, and I represent the appellant, Mr. Keller, in this matter, and I'd like to reserve three minutes for rebuttal. We requested this court reverse the judgment of the trial court for the reasons set forth in our brief, and just a little bit of background in this case. Of course, this is one of the Hoyt partnership cases. The deficiencies have been conceded. This particular Hoyt partner invested in 1995, and a 20% negligence penalty has been conceded if it indeed ends up relating to that year. The concession for the 20% negligence penalty is for tax year... But 95 currently we're looking at a 40% valuation penalty, and they don't stack, so it would be in the alternative. Okay. I just want to be clear about that, because if we were to agree with you on the overvaluation penalty, you have conceded the negligence penalty applies to both tax years. That's correct, Your Honor. Okay. So all that would remain from, in your point of view, is math? Correct, Your Honor. Does that require going back to the tax court? I'd have to look at it. I do know that the commissioner believes it does require going back for just a calculation. I just don't know the procedure. It could be just math, or just the tax procedure. Okay. Well, it is just math. Okay. Well, perhaps the two of you might get together and advise us on that, because, you know, if we write an opinion or a disposition, I mean, there has to be a mandate line. Right. And so we would need to know on that contingency whether there is a need to remand or whether you all would just resolve the math. Anyway, thank you. Go ahead. It would need to be remanded unless we could stipulate to a number for the court, I would say. At this time, the commissioner has conceded the 1994 valuation penalty, and so we're only looking at the 1995 valuation penalty. And in our — it's our position that there are no cattle. It's been Commissioner's position that there are limited cattle or phantom cattle for years. So why are we applying a valuation penalty to this particular case? Well, in this case, you simply conceded the deficiency, and there is no ground given for it. So your argument that the deficiency was disallowed because there were no cattle is just an argument. Actually, I'm referring to the litany of cases out there. For example, Durham Farm, number one, determined that the benefits and burdens did not pass law. I understand that. But here, you just basically said, Uncle, without — without ever getting to the point of a finding or a determination, you just said, fine, the deficiency is disallowed, right? Pretrial. Do you think you need to have a reason? No. It was pretrial. The petition — we did provide evidence. If, indeed, the burden is on the taxpayer, we did present evidence that there were no cattle, and there were questions about cattle going back all the way to 1982. And therefore, 1995, it's a huge question whether there's cattle. So we also did go forward and present evidence. The concession was pretrial, so both parties had the opportunity to present evidence on the issue. Commissioner chose not to. Okay. Let me ask you what to me seems to be the kind of heart of this problem, and it is that we have already a circuit split in that the Ninth Circuit has aligned itself in effect with the Fifth Circuit. Gaynor followed Todd, and now Todd has been followed by Heasley in the Fifth. Everybody else has a different view and has taken the view that those two cases are either — that Todd and Gaynor are either wrong or distinguishable. So the real question here, and what I would appreciate hearing from you on, is why, in your view, Gaynor controls? And the same question, of course, in reverse to the Commissioner when his turn comes around, and that would be why it doesn't. Gaynor controls because the containers in that case were not placed in service. That's effectively the same as not existing. As a matter of fact, I believe if we go back and look at the — one of those cases, I think some of the containers did not exist. But Gaynor was based on not placed in service. There was nothing to value. There is nothing to value here, or there appears to be nothing to value here. So Gaynor would control. Gaynor wasn't a valuation issue. It was a — whether it qualified in the first instance, right? Because they weren't placed in service. It had nothing to do with valuation. It had to do with whether the entity existed for purposes of claiming the deduction in the first instance. It wasn't valued at whatever, but — The placed-in-service issue, that's correct. Yeah, well, that's what Gaynor was — But there was a valuation penalty issue. Where — well, I understand, but Gaynor — and Gaynor said when the item is disqualified, for a reason unrelated to valuation, it could be — it could have been worth everything. The deduction could have been justified on its merits. But if the cargo ship or whatever wasn't placed into service, it doesn't — you don't get the valuation, right? Exactly. And we believe — How does that work here? I mean, here you're — it's valuation, and valuation turns on a variety of factors, indeed including whether there is such an entity at all. But it isn't as if these cows were placed in service or not. The placed-in-service can be an issue with cattle as well. But it is comparable, not that they didn't exist, not placed in service. There's simply nothing to value. And the deficiency — no matter when the concession happened or if the concession didn't happen, the reason why there is a deficiency is because there were no cattle. If I could keep the rest of my minutes for rebuttal. Sure. Thank you. All right, Mr. Sheehan. May it please the Court, I'm Anthony Sheehan. I represent the Commissioner of Internal Revenue. With me is Greg Hong from Area Council to help with the huge records in these cases. Two things. The first matter that came up was whether it's straight math. And Ms. Miriam can disagree with me on rebuttal, but looking at my brief, the deficiencies are on page 12 of the government's brief. And if we are not upheld on the 40 percent penalty, the Ms. Miriam disagrees, of course, we can work it out for the Court and let the Court know. The next more substantive question is dealing with the Gaynor, Todd, and Heasley line of cases. In Gaynor, the problem was that the shipping containers at the year at issue were not placed in service at all. There was a completely independent reason for disallowing the deductions that had nothing to do with valuation. In that sense, Gaynor and Todd are very, very similar. And that's also the reason why the government conceded the 1994 the overvaluation penalty for the 1994 tax year. Squarely Gaynor and Todd. That's squarely Gaynor and Todd. He had not joined the partnership yet. Where this Court has not yet gone and where there is the split is between Heasley and the Fifth Circuit and all the other circuits. Heasley is an extension of Todd. In Heasley, the Fifth Circuit said that where there's a, where a deduction is disallowed in full, it's disallowed because it's disallowed. And there's no overvaluation because the deduction has gone all the way. The way the other circuits have gone, all the other circuits that have considered this issue is that, if I may back up for a moment, really there are two ways to, two ways to look at this penalty. There's sort of this classic application of the penalty where I donate something to charity and I overvalue it. I put a machine in service. I take too high a basis for depreciation. But the other issue where there is this circuit split where this Court has not yet taken a position in a published opinion is when you have valuation as part of a overall analysis of economic sham, where it's an inextricable intertwined part of this larger analysis of economic sham. The majority of the circuits that have looked at this have said where valuation cannot be separated out of this overall analysis, then valuation did play a role in the disallowance of the deductions, did play a role in the underpayment, and therefore the underpayment is in that sense attributable to the overvaluation. That's what Gilman said in the second circuit. Right. Gilman, that's what all the other circuits that have addressed it have said. It seems to me there's considerable force to that, except we don't write on a clean slate. And it seems to me that what Todd said and what we said in Gaynor was we embrace the blue book, I think it's the shorthand for the manual thing, formula, and applying it if there is a, if the deduction is disallowed in its entirety, then the overvaluation, if any, is subsumed within that. In other words, it's just in effect obliterated as a consequence. So if that's so, then why doesn't Gaynor simply control when, as here, the deduction through a concession or otherwise is disallowed in its entirety? In other words, and put differently, why does the reason for it even matter under Todd, excuse me, under Gaynor? Excuse me, Your Honor. The reason matters because in Gaynor, first of all, the government would submit that the discussion of the blue book formulas was in dicta, but also Gaynor presented what I would call the classic case. It presented a case where the overvaluation had nothing to do at all with the reason for the disallowance. It did not present a case like the Eighth Circuit and all the other circuits that have looked at it. In Gaynor, the shipping containers were not put in service. They could have been overvalued, properly valued, undervalued. Valuation did not enter into it. Indeed, Gaynor, I believe, commented favorably towards the back of the opinion citing the IROM case of the Second Circuit that that same reasoning might not apply. It didn't commit itself to anything, but it might not apply in a situation like this one where you have an economic sham, where there are so many different elements playing into it. I know the taxpayers like to argue there were no cows. Well, Hoyts, even at this late date, still had thousands of cows. There was definitely a cattle shortage, but the shortage is an element of the overall sham. By this point, by 1995, the year we're talking about, we have to separate these people out for judicial purposes and for resolving their cases. But in reality, the Hoyt organization in and of itself was a huge sham. Nobody had the benefits and burdens of ownership of the cows that actually did exist, perhaps maybe Hoyt or his top level, his family. So that was one part of it. Valuation was part of it. Valuation also played a role in saying that the cattle acquisition debt was not valid indebtedness because the cattle were so overvalued that you could not develop equity. So valuation plays throughout this, and it also plays a big role in deductions like depreciation and interest, which are the key components here of the deficiency. So we would submit that. And also, I think it's important to note that also while it's in a gainer situation, you can say there's a totally independent reason. You cannot do what Mr. Keller would like to do here and separate out all these factors that are all part of one larger analysis and pick out one factor and say, well, there's a cattle shortage, therefore. No, that's part of the overall reason why this is a sham, along with valuation and the other matters. So if the Court has no further questions, on this one of four cases, we'll go to Ms. Miriam and see what she wants to say on this. Thank you, Your Honor. We submit that the Ninth Circuit got it right by relying on the other proper adjustments. And there's evidence that this was correct. The cases that we're citing, these older cases, are cases we often call stacking cases. Penalties were stacked. You could have an overvaluation penalty and a negligence penalty in the same case. And Congress went in and corrected that, changed that. Now we can't have that. That's why we don't have that in this case. We have either or. In other words, Congress went in and said, no, you only get one. We submit this Court did it right when it followed the blue book, it followed the congressional intent, as is evidenced by what's happened under 6662. Any other questions? Okay. Well, let's start on McDonough then.
judges: Fletcher, Rymer, Fisher